## French Creek Dam.

*Criminal law—Fish law—Dam sold by commonwealth—Act of* 1803.

A dam on a navigable stream, a public highway, erected by the commonwealth and by it sold to private parties under the Act of April 9, 1849, P. L. 765, is exempted from the provisions of the act of March 21, 1803, 4 Bioren's Laws, 20, as to the preservation of a passage for fish if the dam is maintained in the same manner as when sold to defendant's predecessors by the commonwealth.

Argued May 21, 1900.   Appeal, No. 229, April T., 1900, by James Higgins in the matter of the obstruction to the passage of fish up French creek occasioned by the maintenance of a dam for a mill upon said creek, at the city of Franklin, Venango county, from order of Q. S. Venango Co., Jan. T., 1899, No. 19, dismissing petition.   Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.   Affirmed. Opinion by ORLADY, J.

Petition in the matter of the obstruction to the passage of fish up French creek, occasioned by the maintenance of a dam on said creek for a mill.   Before CRISWELL, P. J.

It appears from the record that James Higgins filed his petition to appoint three commissioners to view a dam on French creek and compare it with the provisions of the act of assembly approved March 23, 1803.   The commissioners filed their report and a rule was granted to show cause why an indictment should not be presented to the grand jury, whereupon the court filed the following order:

[Rule to show cause why an indictment should not be presented to the grand jury.   It not appearing, therefore, that any offense against the act of 1803 has been committed, or that there is any obligation under the law on the part of the owners of

the dam in question to provide sluices or fish ways therein, the rule to show cause why an indictment should not be sent to the grand jury is discharged.

And now, October 23, 1899, the petitioner in the above entitled case excepts to the decree of the court entered this day, and at his request a bill of exceptions is sealed.] [1]

Petitioner appealed.

*Error assigned* was to the order of the court, reciting same.

*A. R. Osmer*, with him *John O. McCalmont*, for appellant.— Although this proceeding is in the form of an appeal, yet the act of assembly not having provided for a decision upon the merits as it now stands, the court is asked to consider this only as a common-law certiorari which brings up merely the record. We have the petition of a citizen of the city of Franklin affected by the injury complained of and the report of the commissioners appointed under the act of 1803, that at the mouth of French creek, one of the most important streams in northwestern Pennsylvania, a dam is maintained not in accordance with the law; yet the court has refused to allow the matter to be further investigated, and thereby stopped at the outset all attempts to have the question properly recognized. It could not have been the intention of the legislature to allow the court of quarter sessions of any county so arbitrarily to dispose of the rights of the public without a chance for a hearing. That the state of Pennsylvania by the act referred to in the answer did infringe upon the rights of the public is conceded, but that it could transfer the wrong that it had done to another, so that the same could not be remedied, is denied, and to that effect are the decisions of our court of last resort: Railroad Co. v. Duquesne Borough, 46 Pa. 223; Com. v. Railroad Co., 51 Pa. 351.

The statute neither did nor could confer such powers, as those claimed by the defendants, upon private persons. Only corporations organized for public purposes can be clothed with such privileges; to such and such only may the legislature grant the commonwealth's right of eminent domain: Finney v. Somerville, 80 Pa. 59.

The authorities cited and relied upon by the learned court below and now used by the appellees have no bearing upon this case.

In Erie v. Canal Co., 59 Pa. 176, there was a grant to a public corporation for a public use, and under the decisions we have already quoted the legislature might grant to them the right to serve the public as the state had been obliged to do theretofore.

In Commonwealth v. Penna. R. Co., 51 Pa. 351, the ruling which is contended for by the appellant in this case is fully sustained.

*Thomas McGough,* for appellee.—The dam and lock is in the same condition now as when erected by the state. The dam was erected by the state for the improvement of navigation, and was authorized by the act of the general assembly of April 11, 1825, P. L. 235, sec. 4, and its supplements, among which are the Acts of February 25, 1826, P. L. 55, and March 21, 1831, P. L. 194, sec. 5.

The legislature by Act of April 9, 1849, P. L. 765, authorized and empowered " the canal commissioners to sell at public sale the state dam erected across French creek at the borough of Franklin, in the county of Venango."

After using this dam for over forty years, according to the conditions specified in the act of 1849, a petition was presented by one Jas. Higgins, in 1898, to the court of quarter sessions, alleging that subsequent to March 23, 1803, a dam was erected upon said French creek at Franklin which is still maintained for a mill, and which by its said maintenance has obstructed, impeded and prevented . . . . the passage of fish up said stream, contrary to the act of 1803, and asked for the appointment of three commissioners to view the aforesaid dam and compare it with the provisions of the said act of 1803, and report to the court at its next session the state thereof.

The distinction between a dam under this act and a dam erected by the state or its agents, for the purpose of improving navigation, has been clearly drawn by the Supreme Court. Judge Huston in Navigation v. Coons., 6 W. & S. 101, 116, says : " It will not be contended that the operations of the act of 1803 tied up the state from public improvements."

It has been held time and time again that the state or its agents, in improving the navigation of streams, may totally destroy a dam under the act of 1803, and that the owners would have no redress. See Monongahela Navigation Co. v. Coons, 6 W. & S. 101, 112.

In none of them is it held that the purchaser of a public works erected by the state is held to any higher duty or obligation than was incumbent on the state when owned by it unless this burden is expressed in grant or contract: Railway Co. v. Duquesne Borough, 46 Pa. 223.

OPINION BY ORLADY, J., July 26, 1900 :

On November 28, 1898, James Higgins presented his petition to the court of quarter sessions of Venango county, setting forth, inter alia, that subsequent to March 23, 1803, a dam was erected upon French creek, a public highway in said county, " which dam is still maintained for a mill and which by its said maintenance has obstructed, impeded and prevented, and does still obstruct, impede and prevent the passage of fish up said stream, contrary to the act of assembly in such case made and provided, to wit: the act approved the 23d day of March, 1803 ; " that Johnson & Company are the owners of the said mill dam and have maintained such dam hitherto and do still maintain it in such manner as to obstruct, impede and prevent the passage of fish as aforesaid, and he prayed the court to appoint three commissioners to view the dam and compare it with the provisions of the act, and report to the court at its next term, etc., as provided by said act. A rule to show cause was granted and the case was placed on the argument list and was argued on December 5, 1898. On January 7, 1899, Johnson & Company appeared and filed an answer in which the existence of the dam was admitted as alleged, but they denied that they maintained it so as to obstruct, impede and prevent the passage of fish, and contended that the dam was not built or maintained under the provisions of the act of 1803, and that it is not subject to its restrictions or penalties, etc.

On April 24, 1899, the rule to show cause was made absolute and three commissioners were appointed " to inquire and report at the next term of court as provided by the 2d section of the act of March 23, 1803." The commissioners took

testimony and with the testimony attached made return to the order as follows: "We find that when the water in French creek and the Allegheny river is high the fish can pass up over the dam, but at other times the dam is an obstruction to their going up, we do not find any way provided to enable them to go up at all times during the season of their migration, as in our opinion is contemplated in the act of March 23, 1803."

On August 28, 1899, when the report of the commissioners was filed, a motion was made by the petitioner for an order directing an indictment to be presented to the grand jury, etc. A rule to show cause was granted on this motion, and after argument, the court made the following order: "It not appearing, therefore, that any offense under the act of 1803 has been committed, or that there is any obligation under the law on the part of the owners of the dam in question, to provide sluices or fish ways therein, the rule to show cause why an indictment should not be sent to the grand jury is discharged." To which decree of the court the petitioner excepted and the record was then removed to this court on appeal.

By act of March 21, 1798, 3 Bioren's Laws, 320, French creek was declared a public stream and highway. By act of March 21, 1803, 4 Bioren's Laws, 20, it was provided, section 1 : "That all and every person . . . . owning lands, adjoining any navigable stream of water, declared by law a public highway . . . . be and they or either of them are hereby authorized to erect a dam or dams, for a mill or mills or other waterworks upon such stream of water, adjoining their own lands, and to keep the same in good repair . . . . provided, that the said person or persons . . . . in erecting said dam or dams, or keeping them in repair, shall not obstruct or impede the navigation of said stream, or prevent the fish from passing up stream." Section 2 provides : "That on complaint made to the judges of the court of quarter sessions of any county in this commonwealth, that if any such dam obstruct the navigation or impede the passage of fish, they shall appoint three commissioners, who shall view such dam and compare it with the provisions of this act, and report to them at their next session the state thereof, and if it shall appear to the said court that an offense has been committed against this act, the court shall direct a bill of indictment to be sent to the grand jury, and upon prosecution to

conviction of such offense, the person or persons so convicted, shall be liable . . . . and the court shall direct the supervisors of the adjoining townships forthwith to remove every such artificial obstruction in such manner as to bring the same within the limitations and provisions of this act at the cost of the person so convicted."

The act of 1803 gave to the court of quarter sessions jurisdiction over dams in navigable streams only when "an offense has been committed against this act," and if the dam in question was not such as was contemplated by that act, the court rightly refused to direct a bill of indictment against the owner to be sent to the grand jury. The report of the commissioners is fatally defective in not stating that the dam in French creek is such a dam as is contemplated by the act of 1803. The reason given by the court may not be binding on us, but it was proved, without objection to the evidence or denial of the fact, that this dam was erected by the commonwealth and was sold as part of the property of the state to the predecessors of Johnson & Company, under legislation (Act of April 9, 1849, P. L. 765) which exempted it from the provisions of the act of 1803, the only condition in the grant from the the state being as follows: "It shall be, and it is hereby directed to be a condition of the sale of the dam and lock at Franklin aforesaid that the purchaser or purchasers of the said dam and lock and their heirs and assigns forever, shall and they are hereby required to keep said dam and lock in a state of good repair." The state had the right to impose such conditions as might be considered necessary to protect the interests of the public ; and subject to this condition, the title of the state vested in the purchaser. If the title to this dam yet remained in the commonwealth the act of 1803 would not apply to it, and under the subsequent legislation authorizing its sale, the provisions of the act of 1803 were not extended to it. If the owners are in default they are liable, but their default is to be determined by their title.

The state did not abdicate its trust over this navigable stream so as to leave it entirely under the use and control of private parties. There remained with the state the sovereign right to revoke its grant and exercise its authority in a more direct manner, and one more conformable to its wishes for the

preservation of the general right of the public.   But this power can be exercised in a legal way only.   If it has sold property and received the purchase money, the retaking of the property can be done only after making just compensation to the owner. This dam is not beyond the control of the state, but, if now maintained in the same manner as when sold to the defendants' grantors it might under some circumstances become an interesting and important question whether the act of 1803 would apply to it, but it is not necessary to the decision of this case to pass on that question.   The report of the commissioners does not declare that fish cannot pass up over the dam during the season of their migration.   There may be no way provided to enable them to go up at all times during the season of their migration as contemplated by the act of 1803, and yet, its original construction may be such as to enable the fish to pass up over the dam during such period.   The commissioners report that when the water in French creek and the Allegheny river is high the fish can pass up over the dam, but at other times the dam is an obstruction to their going up.   It does not state whether this is the season of their migration or whether the dam is an obstruction during the period of their migration.   When the act of 1803 directed that the bill of indictment be sent to the grand jury "if it shall appear to the said court that an offense has been committed against this act," it was manifestly the intention of the legislature to prevent vexatious and unavailing prosecutions.   The court had the right to determine the regularity of the proceedings, and no exception was taken to its manner of procedure in determining whether this dam was subject to the provisions of the act of 1803.   The defense to the rule raised a purely legal question, which affected the jurisdiction of the court, and, with the assent of the petitioner, was presented to the court for its decision on the facts as shown by the report of the commissioners and the evidence attached thereto.

We have nothing to do with the merits of the case, as they are not properly before us, but in the exercise of a legal discretion by the court below, the whole case was developed without objection, and the same result was reached as if an indictment had been found and the case tried before a jury.   The court held as matter of law that this dam was not subject to the provisions of the act of 1803.

The judgment is affirmed.